Filed 6/24/24  Chang v. Fire Insurance Exchange CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| WILD CHANG et al., | B326896 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC650876) |
| v. | |
| FIRE INSURANCE EXCHANGE et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Teresa A. Beaudet, Judge.  Affirmed.

Wild Chang, in pro. per., Kenneth Lo, in pro. per., Wild Chang, Jr., in pro. per., for Plaintiffs and Appellants.

Woolls Peer Dollinger & Scher, Gregory B. Scher and H. Douglas Galt for Defendants and Respondents.

_____

# INTRODUCTION

Wild Chang and Kenneth Lo were insured under a policy issued by defendant Fire Insurance Exchange. They submitted a claim under the policy, which they alleged was handled in bad faith. Chang, Lo, and Chang's son, Wild Chang, Jr. (Chang Jr.), sued Farmers Insurance Company, Inc. (Farmers), Fire Insurance Exchange, and agent Stacy Chern for breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, and other related causes of action. In their operative third amended complaint, filed *in propria persona*, Chang, Lo, and Chang Jr. also sued the law firm of Woolls Peer Dollinger & Scher (Woolls Peer), alleging it engaged in fraud while representing other defendants in this consolidated litigation. The trial court sustained Farmers' demurrer to the third amended complaint without leave to amend and entered a judgment of dismissal in Farmers' favor, which this court affirmed on appeal. (See *Chang v. Farmers Insurance Company, Inc.* (June 16, 2023, B321411) [nonpub. opn.].) Woolls Peer filed a special motion to strike under Code of Civil Procedure section 425.16, which the trial court granted and this court also affirmed on appeal. (See *Chang v. Farmers Insurance Company, Inc.* (June 14, 2023, B317518) [nonpub. opn.].)

While the previous two appeals were pending, the trial court issued several discovery orders with which Chang and Lo (the remaining plaintiffs) did not comply. The trial court subsequently granted a motion for terminating sanctions filed by Fire Insurance Exchange and Chern (the only remaining defendants) and entered judgment against Chang and Lo. We affirm.

2

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *Plaintiffs' Insurance Claim and Consolidated Actions*

These consolidated actions arise out of an insurance claim that plaintiffs submitted for losses caused by a fire in their home in December 2014.  In February 2017, plaintiffs Chang and Lo filed their original complaint against Farmers, Fire Insurance Exchange, Stacy Chern Insurance Agency, and Chern.

In August 2017, Chang and Lo filed a second amended complaint that substituted Farmers Insurance Group of Companies for Farmers.  In January 2018, plaintiffs voluntarily dismissed the action with prejudice as to Farmers Insurance Group of Companies.

In January 2021, plaintiffs Chang, Lo, and Chang Jr. filed a second action against Farmers, Fire Insurance Exchange, Stacy Chern, and Woolls Peer.  The actions were consolidated and the operative third amended complaint deemed filed in July 2021.

In the third amended complaint, plaintiffs alleged causes of action for fraud, breach of the covenant of good faith and fair dealing, breach of contract, unfair business practices, professional negligence, and emotional distress against all defendants. Plaintiffs alleged Farmers and Fire Insurance Exchange, acting in bad faith, made a grossly deficient settlement offer for the claim plaintiffs submitted for their fire loss.  Plaintiffs also alleged Farmers, Fire Insurance Exchange, and Chern engaged in a fraudulent scheme to "convert the 'insurance'" plaintiffs allegedly purchased from Farmers "into a mere 'self-owned membership' in an unincorporated association, i.e., [Fire Insurance Exchange] . . . in order to insulate [Farmers] and its agents from all of the legal liabilities arising from the deceptive and non-conforming insurance sold to [p]laintiffs."

Plaintiffs alleged that Farmers acted as the "principal/agent" of other defendants, including Fire Insurance Exchange, and that Fire Insurance Exchange "act[ed] as a 'veil'" so that Farmers could limit its liability. Plaintiffs also alleged Chern acted as an agent of Farmers, not Fire Insurance Exchange.

Plaintiffs alleged that, after the fire, defendants failed to properly investigate the damage caused by the fire, failed to provide temporary housing as required by the policy, and failed to provide adequate compensation for the claim. Plaintiffs also alleged defendants threatened to terminate the policy at a time they knew plaintiffs could not obtain coverage elsewhere. Defendants took more than a year to complete their investigation and finally issued a check for the allegedly grossly deficient amount of $19,925.91, even though estimates for repairs exceeded $150,000. Plaintiffs alleged the offer to pay $19,925.91 was made in bad faith. Plaintiffs rejected the offer and sued.

Plaintiffs also alleged that stress from the experience caused Chang to suffer a stroke, the aftermath of which his minor son, Chang Jr., witnessed.

Plaintiffs alleged defendants' counsel Woolls Peer participated in the alleged fraud through actions taken in the litigation, including by representing Fire Insurance Exchange, which plaintiffs characterize as a "non-party"; moving to dismiss Farmers on the ground that Farmers was not the insurer; and filing various other motions. Plaintiffs alleged that Woolls Peer made false representations in court filings and in communications with opposing counsel and that Woolls Peer failed to conduct sufficient due diligence before agreeing to represent Farmers and Fire Insurance Exchange. Plaintiffs alleged Woolls Peer's litigation activities constituted a "form of malicious prosecution."

4

Woolls Peer filed a special motion to strike (anti-SLAPP motion) under Code of Civil Procedure section 425.16, which the trial court granted in October 2021, and this court affirmed on appeal. (*Chang v. Farmers Insurance Company, Inc., supra,* B317518.)

Farmers demurred to the third amended complaint on numerous grounds, including that Farmers was not a party to the insurance contract and did not owe plaintiffs any duty. The trial court sustained Farmers' demurrer without leave to amend in October 2021, and entered a judgment of dismissal in Farmers' favor in May 2022, which this court affirmed on appeal. (*Chang v. Farmers Insurance Company, Inc., supra,* B321411.)

The trial court also sustained demurrers by Fire Insurance Exchange and Chern to the fraud and emotional distress causes of action, including those of Chang Jr. Plaintiffs filed a petition for writ of mandamus seeking to vacate the trial court's order sustaining the demurrers without leave to amend, which this court denied. (*Chang v. Superior Court* (January 5, 2022, B317135).) That left Chang and Lo as the only remaining plaintiffs.

At the time of the motion for terminating sanctions at issue in this appeal, the remaining defendants were Fire Insurance Exchange and Chern, and the remaining causes of action were breach of the covenant of good faith and fair dealing, breach of contract, and unfair business practices against Fire Insurance Exchange, and professional negligence against Chern.

B.  *Relevant Discovery History and Events Leading to the Terminating Sanctions Against Chang and Lo*

1.  *Written discovery requests, and orders to compel responses and sanctions*

In May and August 2019, defendants served Chang and Lo each with sets of special interrogatories, requests for production of documents, and requests for admission. Defendants propounded additional written discovery requests on Chang and Lo in May 2020, including form interrogatories, additional sets of special interrogatories, and additional requests for production.

Chang and Lo did not provide substantive responses nor did they respond at all to the May and August 2019 discovery requests. In June 2020, defendants filed motions to compel responses or supplemental responses to these discovery requests, with requests for monetary sanctions in conjunction with each motion.

On October 28, 2020, the trial court granted defendants' motions to compel further responses to special interrogatories (Set 2) to Chang, further responses to requests for production (Set 2) to Chang, responses to special interrogatories (Set 3) each to Chang and Lo, and responses to requests for production (Set 3) each to Chang and Lo.[1] The trial court ordered plaintiffs to provide verified responses and supplemental responses within 30 days, and further ordered Chang and Lo to pay sanctions totaling $2,748 within 60 days. At plaintiffs' request, the court extended the deadline to pay the sanctions to March 2021.

---

[1]  The court initially stated its intent to grant defendants' motions to deem admitted requests for admission served on Chang and Lo, but ultimately denied these motions as moot because Chang and Lo each filed responses on October 27, 2020.

Plaintiffs did not comply with the October 28, 2020 order to provide verified and supplemental responses within 30 days and instead served objections to the discovery requests in January 2021. Contemporaneously, plaintiffs served their initial responses to the discovery propounded in May 2020; these responses were six months late and consisted solely of objections.

Defendants filed several motions to compel responses from Chang and Lo to the discovery propounded in May 2020 and to compel supplemental responses to the discovery propounded in May and August 2019, with requests for monetary sanctions. The trial court granted these motions in four separate orders.

First, on February 25, 2021, the court ordered Chang and Lo each to provide verified supplemental responses, without objections, to form interrogatories (Set 1); it further ordered each of them to pay sanctions in the amount of $669.65.

Next, on February 26, 2021, the court ordered Chang and Lo each to provide verified supplemental responses, without objections, to special interrogatories (Set 4); it further ordered each of them to pay sanctions in the amount of $479.65.

Third, on March 1, 2021, the court ordered Chang and Lo to produce responsive documents and provide verified supplemental responses, without objections, to requests for production of documents (Set 4); it further ordered each of them to pay sanctions in the amount of $517.65.

Finally, on March 4, 2021, the court ordered Chang to produce responsive documents and to provide verified supplemental responses, without objections, to special interrogatories (Set 2) and further responses to requests for production of documents (Set 2); it further ordered Chang to pay additional sanctions in the amount of $1,301.30. The court

7

admonished both plaintiffs that "[f]urther failure to provide code compliant responses and document production may result in further sanctions, including exclusion orders."

One year later, plaintiffs still had not complied with any of the court's discovery and sanctions orders.[2]

In March 2022, Fire Insurance Exchange and Chern moved for terminating sanctions or, in the alternative, evidentiary sanctions precluding plaintiffs from introducing at trial evidence they failed to produce. They also sought monetary sanctions in the amount of fees and costs incurred to bring the motion.

On April 20, 2022, the court granted defendants' motion in part by imposing evidentiary and monetary sanctions against plaintiffs. The court granted evidentiary sanctions precluding: (1) evidence that Fire Insurance Exchange or Chern breached their duties to plaintiffs, (2) evidence of tort damages, and (3) evidence regarding any work that had been done or needed to be completed on the property. The court noted that "[n]otwithstanding the court orders dated February 25, 2021, February 26, 2021, March 1, 2021, and March 4, 2021 requiring Plaintiffs to serve supplemental responses to discovery within 30 days, no additional responses have been served, nor have any sanctions been paid." The court declined to impose terminating

---

[2] Unrelated to this appeal, in March 2022, the trial court denied several motions to compel by plaintiffs, and it ordered plaintiffs to redraft certain of their discovery requests, granted in part a motion for protective order filed by defendants, and further ordered plaintiffs to pay $1,030.65 in sanctions for unsuccessfully opposing the motion for protective order. (Code Civ. Proc., §§ 2019.030, subd. (c), 2017.020, subd. (b).). Plaintiffs did not comply with this order either, but it was not a basis for defendants' motion for terminating sanctions.

8

sanctions but stated that "it is appropriate to issue evidentiary sanctions at this time in order to produce Plaintiffs' compliance with the discovery rules."  The court also determined "monetary sanctions are warranted for Plaintiff's [*sic*] failure to comply with the Court's October 28, 2020, February 25, 2021, February 26, 2021, March 1, 2021, and March 4, 2021 orders," and ordered plaintiffs to pay $2,279 for misuse of the discovery process.  (See Code Civ. Proc., § 2023.030, subd. (a).)

In June 2022, plaintiffs filed several petitions for writ of mandate seeking to vacate the trial court's orders of October 28, 2020, February 25, 2021, February 26, 2021, March 1, 2021, March 4, 2021, March 8, 2022, and April 20, 2022, all of which this court denied.  (*Chang v. Superior Court* (June 8, 2022, B320676, B320682, B320683, B320684, B320685, B320686, B320687.)

2.  *Attempts to depose Chang and Lo, and further court orders and sanctions*

In March 2022, Fire Insurance Exchange and Chern sought to depose plaintiffs in advance of trial but Chang and Lo did not respond to requests for available dates.  Defendants noticed plaintiffs' depositions for April 6 and 7, offering that defendants would re-notice them for different dates if plaintiffs provided alternative deposition dates.  Plaintiffs did not respond or appear for their noticed depositions.

Defendants moved to compel the depositions of Chang and Lo.  Plaintiffs opposed, arguing that defendants "have exhausted all the legitimate questions" about the fire incident and "Plaintiffs will not oblige to Defendants' manipulations designed to trap Plaintiff Lo" through discovery requests, depositions, and "wrongful sanctions by the court."  Defendants argued that

9

plaintiffs' opposition provided no justification for not appearing at their noticed depositions or for not providing alternative deposition dates.

On October 14, 2022, the trial court granted the motion to compel the depositions, ordering Chang to appear remotely for deposition on October 27 and Lo on November 1; it further ordered each to pay monetary sanctions in the amount of $1,466.15.

Chang cancelled his court-ordered October 27 deposition by email on October 26 stating, "'I have had a flare-up of my poststroke medical condition, causing severe numbness and impairing my already limited ability to speak,'" and asking to reschedule the deposition to November 7. Given the November 14 trial date, defendants' counsel requested an earlier date; Chang suggested November 4, and defendants' counsel re-noticed Chang's deposition for November 4.

On October 28, plaintiffs filed a motion to stay the trial court proceedings arguing their then-pending appeals in this court required an automatic stay. Plaintiffs filed an ex parte application to advance the hearing on their motion for stay, which the court denied.

On October 31, plaintiffs notified the defendants that Lo would not be appearing at his court-ordered deposition on November 1 because Lo would be appearing at the ex parte hearing on the application that plaintiffs had just filed.

On November 2, plaintiffs filed an amended motion for stay, and once again applied ex parte to advance the hearing on their amended motion for stay, which the court denied "for lack of good cause."

On November 3, plaintiffs notified the defendants that Chang would not be appearing at his rescheduled deposition on November 4 because he had "'not recovered well enough.'"

### 3. *Plaintiffs' failure to file pretrial documents*

Defendants also attempted to confer with plaintiffs about whether plaintiffs would participate in filing joint pre-trial documents, as required by local rule, but received no response.[3] Defendants thereafter filed their own pre-trial documents. Plaintiffs filed only an exhibit list.

On November 4, 2022, the trial court ordered that because plaintiffs had not filed a witness list or jury instructions before the final status conference, they were precluded from calling any witnesses at trial, and the trial would be a court trial.

### C. *The Trial Court Grants Terminating Sanctions*

Fire Insurance Exchange and Chern again moved for terminating sanctions against Chang and Lo. Plaintiffs opposed, arguing that their rescheduling of depositions was for "medical and conflicts reasons" and that they had offered to be deposed November 10 or 11; no orders specified they had to supply pretrial documents such as jury instructions or witness lists by a

---

[3] Los Angeles Superior Court Local Rule 3.25(f)(1) provides in relevant part: "At least five days prior to the final status conference, counsel must serve and file lists of pre-marked exhibits to be used at trial (Local Rules 3.151, 3.53, and 3.149), jury instruction requests, trial witness lists, and a proposed short statement of the case to be read to the jury panel explaining the case. Failure to exchange and file these items may result in not being able to call witnesses, present exhibits at trial, or have a jury trial."

11

certain date before trial; and, they had complied with discovery orders "until discovery of *fraud*" allegedly perpetrated by Farmers, Wools Peer, Fire Insurance Exchange, and Chern. Defendants argued in their reply brief that plaintiffs provided no support for Chang's claim of medical inability to attend the court-ordered depositions; plaintiffs suggested the November 10 and 11 dates only after the motion for terminating sanctions was filed; and the court had issued an order specifying the requisite pretrial documents and identifying the applicable local rules.

On November 14, 2022, the first day of trial, the trial court heard argument on the terminating sanctions motion. Plaintiffs did not appear. The trial court granted the motion for terminating sanctions and struck the third amended complaint. The court ruled that "terminating sanctions are warranted here" due to "Chang and Lo's failures to answer discovery, to appear for Court-ordered depositions, and to pay monetary sanctions as ordered."

The court found that Chang's and Lo's failure to appear for their depositions was "willful" because: Lo set an ex parte hearing on the date of his court-ordered deposition; Chang failed to appear at his rescheduled deposition on a date he suggested; and Chang failed to provide a medical note attesting to his medical inability to appear remotely for deposition. The court also noted that lesser sanctions—in the form of its prior discovery and sanctions orders—were "ineffective in mandating Chang and Lo's compliance with discovery rules." The court determined the current violations were "preceded by a history of abuse, and the Court agrees with Defendants that the evidence shows that less severe sanctions would not produce compliance with the

12

discovery rules." The court also ordered Chang and Lo to pay defendants $2,314.15 in monetary sanctions.

The court entered judgment against Chang and Lo and in favor of Fire Insurance Exchange and Chern on November 30, 2022.

Plaintiffs timely appealed.

## DISCUSSION

A.  *Governing Law and Standard of Review*

To enforce discovery obligations and curtail misuse of the discovery process, Code of Civil Procedure section 2023.030 provides that courts may impose monetary sanctions, issue sanctions, evidence sanctions, contempt sanctions, or terminating sanctions (including by dismissing the offending party's action or rendering judgment by default against that party).  (See Code Civ. Proc, § 2023.030, subds. (a)-(e); *New Albertsons, Inc. v. Superior Court* (2008) 168 Cal.App.4th 1403, 1422 ["Section 2023.030 describes the types of sanctions that a court may impose, including monetary, issue, evidence, terminating, and contempt sanctions."].)  "If a monetary sanction is authorized by any provision of this title, the court shall impose that sanction unless it finds that the one subject to the sanction acted with substantial justification or that other circumstances make the imposition of the sanction unjust."  (Code Civ. Proc., § 2023.030, subd. (a); accord, *Manlin v. Milner* (2022) 82 Cal.App.5th 1004, 1023.)  Courts may issue monetary sanctions for misuse of the discovery process against parties, counsel, or both, in the amount of "the reasonable expenses, including attorney's fees, incurred by anyone as a result of that conduct."  (Code Civ. Proc., § 2023.30,

13

subd. (a); see *City of Los Angeles v. PricewaterhouseCoopers, LLC* (2022) 84 Cal.App.5th 466, 502.) "An issue sanction is an order that designated facts are deemed established in favor of the party adversely affected by the misuse of the discovery process, or an order prohibiting the sanctioned party from supporting or opposing designated claims or defenses. ([Code Civ. Proc, § 2023.030], subd. (b).) An evidence sanction is an order prohibiting designated matters from being introduced in evidence. (*Id.*, subd. (c).)" (*New Albertsons, Inc.*, at p. 1422.)

Misuse of the discovery process includes, among other things, failing to respond or submit to discovery, disobeying a court order to provide discovery, and making an unmeritorious objection or evasive response to discovery. (See Code Civ. Proc., § 2023.010, subds. (d)-(g); *Los Defensores, Inc. v. Gomez* (2014) 223 Cal.App.4th 377, 390 (*Los Defensores*).) "Notwithstanding the outcome of the particular discovery motion," monetary sanctions shall also be imposed for failure to confer as required on a discovery motion, in the amount of the "reasonable expenses, including attorney's fees, incurred by anyone as a result of that conduct." (Code Civ. Proc., § 2023.020; see *Safechuck v. MJJ Productions, Inc.* (2023) 94 Cal.App.5th 675, 700, fn. 4.) "The trial court should consider both the conduct being sanctioned and its effect on the party seeking discovery and, in choosing a sanction, should "'attempt[ ] to tailor the sanction to the harm caused by the withheld discovery.'"" (*Doppes v. Bentley Motors Inc.* (2009) 174 Cal.App.4th 967, 992 (*Doppes*).)

"The discovery statutes evince an incremental approach to discovery sanctions, starting with monetary sanctions and ending with the ultimate sanction of termination." (*Doppes, supra,* 174 Cal.App.4th at p. 992.) "If a lesser sanction fails to curb

14

misuse, a greater sanction is warranted: continuing misuses of the discovery process warrant incrementally harsher sanctions until the sanction is reached that will curb the abuse." (*Ibid.*) "The trial court may order a terminating sanction for discovery abuse 'after considering the totality of the circumstances: [the] conduct of the party to determine if the actions were willful; the detriment to the propounding party; and the number of formal and informal attempts to obtain the discovery.'" (*Los Defensores, supra,* 223 Cal.App.4th at p. 390.)

"We review a trial court's decision to impose terminating sanctions for abuse of discretion, drawing all reasonable inferences in support of the court's ruling." (*Karton v. Ari Design & Construction, Inc.* (2021) 61 Cal.App.5th 734, 749.) "'The power to impose discovery sanctions is a broad discretion subject to reversal only for arbitrary, capricious, or whimsical action.' A decision to impose the ultimate sanction—a judgment in the opposing party's favor—should not be made lightly. 'But where a violation is willful, preceded by a history of abuse, and the evidence shows that less severe sanctions would not produce compliance with the discovery rules, the trial court is justified in imposing the ultimate sanction.'" (*Parker v. Wolters Kluwer United States, Inc.* (2007) 149 Cal.App.4th 285, 297 (*Parker*).)

"The appellant bears the burden on appeal of demonstrating that the trial court abused its discretion in imposing a discovery sanction." (*Rutledge v. Hewlett-Packard Co.* (2015) 238 Cal.App.4th 1164, 1191.) Likewise, on appeal "[t]he burden of proving 'substantial justification' for failing to comply with a discovery order" is on the losing party. (*Doe v. United States Swimming, Inc.* (2011) 200 Cal.App.4th 1424, 1435;

accord, *Padron v. Watchtower Bible & Tract Society of New York, Inc.* (2017) 16 Cal.App.5th 1246, 1269 (*Padron*).)

B.     *The Trial Court Did Not Abuse Its Discretion by Imposing Terminating Sanctions*

Although it is plaintiffs' burden to demonstrate the trial court abused its discretion in imposing terminating sanctions (see *Rutledge v. Hewlett-Packard Co., supra,* 238 Cal.App.4th at p. 1191), plaintiffs' opening brief makes virtually no mention of the parties' discovery history; does not address the court's numerous discovery and deposition orders; and provides no discernible argument why the trial court abused its discretion in imposing terminating sanctions.  Plaintiffs also do not challenge the underlying discovery orders that led to terminating sanctions. Instead, plaintiffs reargue the merits of this court's prior two appeals.

We conclude the trial court did not abuse its discretion in issuing terminating sanctions because the record reflects plaintiffs' repeated willful failure to comply with discovery requests and several court orders.[4]  As detailed above, the record demonstrates that despite the trial court's orders:  plaintiffs failed to provide responsive or timely written discovery; failed to appear at their noticed depositions; violated the trial court's orders to provide verified responses, supplemental responses, responsive documents, and other written discovery; violated the

---

[4]     Although the trial court based its terminating sanctions order in part on plaintiffs' failure to pay monetary sanctions and to file certain pretrial documents, we do not affirm the trial court's order on the basis of plaintiffs' failure to pay monetary sanctions or their failure to file pretrial documents.

16

court's orders to submit to deposition; and failed to confer with opposing counsel regarding discovery requests and deposition scheduling. (See *Los Defensores, supra,* 223 Cal.App.4th at p. 390; *Parker, supra,* 149 Cal.App.4th at p. 297.)

The trial court's orders were appropriately tailored, and it imposed orders of increasing severity designed to obtain plaintiffs' compliance. "If a lesser sanction fails to curb misuse, a greater sanction is warranted: continuing misuses of the discovery process warrant incrementally harsher sanctions until the sanction is reached that will curb the abuse." (*Doppes, supra,* 174 Cal.App.4th at p. 992.) When plaintiffs did not comply with orders directing compliance with discovery obligations, the trial imposed lesser sanctions in the form of monetary sanctions and then turned to the greater sanction of three evidentiary sanctions. These orders of increasing severity, however, did not appear to change plaintiffs' unwillingness to cooperate in the discovery process. Indeed, only the threat of terminating sanctions appeared to prompt any response from plaintiffs.

Here, "the record is replete with evidence of [plaintiffs'] failures to answer discovery requests . . . . Time and again, [they] refused to respond despite the issuance of court orders and monetary sanctions." (*Mileikowsky v. Tenet Healthsystem* (2005) 128 Cal.App.4th 262, 280 (*Mileikowsky*).) When the trial court was considering terminating sanctions, plaintiffs had not complied with the court's prior discovery orders and lesser sanctions had been ineffective to induce plaintiffs to comply with their discovery obligations. Further, the trial court found this refusal was willful, a finding plaintiffs do not challenge. The record before us supports the trial court's finding that plaintiffs' noncompliance was willful. Among other things, plaintiffs

17

repeatedly failed to provide answers to several discovery requests despite court orders directing them to respond, Chang rescheduled his court-ordered deposition and then failed to appear, and Lo did not appear for a deposition because it conflicted with a hearing on an ex parte application he set. This refusal to respond to discovery, to follow discovery orders, or to appear for depositions over three years of litigation amply supports the trial court's imposition of terminating sanctions. "[T]he sanctioned party's history as a repeat offender is not only relevant but also significant, in deciding whether to impose terminating sanctions." (*Liberty Mutual Fire Ins. Co. v. LcL Administrators, Inc.* (2008) 163 Cal.App.4th 1093, 1106.) "The court was not required to allow this pattern of abuse to continue ad infinitum." (*Mileikowsky, supra,* 128 Cal.App.4th at p. 280.)

For the first time on reply, plaintiffs argue that they "complied with the court order[s], providing all responses without objection," until January 2021 when they discovered the alleged fraudulent conspiracy among the defendants that became the central focus of their complaint. Thereafter, plaintiffs objected to discovery requests they believed were designed to trap them into agreement with fraudulent factual assertions by defendants. Plaintiffs further argue that "[a]s a matter of fact on the record, it is Respondents/Defendants that have consistently refused to respond to all of discovery requests by Appellants/Plaintiffs."

Plaintiffs have forfeited these arguments because they did not support them with record citations or legal authority, let alone explain how their assertions demonstrate the trial court abused its discretion in imposing terminating sanctions. (See *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 158 ["'We will not ordinarily consider issues

18

raised for the first time in a reply brief. . . . Fairness militates against allowing an appellant to raise an issue for the first time in a reply brief because consideration of the issue deprives the respondent of the opportunity to counter the appellant by raising opposing arguments about the new issue.'"]; *Los Angeles Unified School District v. Torres Construction Corp.* (2020) 57 Cal.App.5th 480, 497 (*Torres*) [""'to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record"'"; "failure to supply record citations or a fully developed argument" forfeits claim of error]; *Hernandez v. First Student, Inc.* (2019) 37 Cal.App.5th 270, 277 [courts may disregard conclusory arguments that are not supported by pertinent legal authority or fail to disclose the reasoning by which the appellant reached the conclusions he wants court to adopt].)

Plaintiffs present no separate argument regarding the terminating sanctions order imposing $2,314.15 in monetary sanctions beyond attacking the order itself. "Because we do not agree the underlying order was invalid, we affirm the monetary sanctions assessed." (*Mileikowsky, supra,* 128 Cal.App.4th at p. 280.)

C.     *A Stay of Trial Court Proceedings Was Not Warranted During the Pendency of the Two Prior Appeals Involving Different Defendants*

Plaintiffs also contend the trial court erred in not automatically staying all trial court proceedings under Code of Civil Procedure section 916 while their appeals involving Farmers and Woolls Peers were pending. Plaintiffs argue that upon the perfecting of these appeals, the trial court lost subject

19

matter jurisdiction, all proceedings should have been stayed, and subsequent trial court rulings—including the terminating sanctions order—were void.

Defects in subject matter jurisdiction ""'may be raised at any point in a proceeding, including for the first time on appeal'" [citation], and may be raised through any available procedural vehicle." (*Corrales v. California Gambling Control Com.* (2023) 93 Cal.App.5th 286, 300.) We review de novo whether a ruling is void for lack of subject matter jurisdiction. (See *LAOSD Asbestos Cases* (2018) 28 Cal.App.5th 862, 871.)

Generally, "'the perfecting of an appeal stays proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby, including enforcement of the judgment or order, but the trial court may proceed upon any other matter embraced in the action and not affected by the judgment or order.'" (*Varian Medical Systems, Inc. v. Delfino* (2005) 35 Cal.4th 180, 189 (*Varian*); Code Civ. Proc, § 916, subd. (a).) A stay pursuant to Code of Civil Procedure section 916 divests the trial court of subject matter jurisdiction over the affected matters. (See *Varian*, at p. 198.) But "the automatic stay does not suspend trial court proceedings on the remaining components of the litigation, for example, claims against other parties[,] . . . not resolved by the judgment or order under appeal." (*Hedwall v. PCMV, LLC* (2018) 22 Cal.App.5th 564, 580, fn. 11 (*Hedwall)*.)

To determine if a proceeding is "embraced in" or "affected by" an appeal, we "consider the appeal and its possible outcomes in relation to the proceeding and its possible results." (*Varian, supra*, 35 Cal.4th at p. 189; see *Elsea v. Saberi* (1992) 4 Cal.App.4th 625, 629 ["[W]hether a matter is 'embraced' in or

20

'affected' by a judgment within the meaning of section 916 depends upon whether postjudgment trial court proceedings on the particular matter would have any impact on the 'effectiveness' of the appeal. If so, the proceedings are stayed; if not, the proceedings are permitted."].) The purpose of an automatic stay is to preserve the appellate court's jurisdiction and "'prevent[] the trial court from rendering an appeal futile by altering the appealed judgment or order by conducting other proceedings that may affect it.'" (*Varian*, at p. 189; accord, *Young v. Tri-City Healthcare Dist.* (2012) 210 Cal.App.4th 35, 51.)

The prior pending appeals dealt only with Woolls Peer and Farmers. By contrast, the proceedings before the trial court here dealt with the remaining causes of action against Fire Insurance Exchange and Chern, constituting "claims against other parties[,] . . . not resolved by the judgment or order under appeal." (*Hedwall, supra,* 22 Cal.App.5th at p. 580, fn. 11.) Trial court proceedings involving Fire Insurance Exchange and Chern would not have any impact on the appeals involving Woolls Peer and Farmers and thus did not "embrace" the issues presented in those appeals or necessitate a stay. Accordingly, the trial court had jurisdiction to issue the discovery orders and the terminating sanctions.[5]

---

[5] We deny plaintiffs' "request that any of the justices or judges that have adjudicated on the other two appeals (B317518 and B321411) be recused from this appeal and from any discussion with the justices and judges to be assigned to this appeal," in order "[t]o avoid . . . any potential, predisposition or bias that is unfair and prejudicial to this appeal." A party's "subjective, unilateral perception of bias" is not a recognized ground for disqualification. (*Haas v. County of San Bernardino*

21

## DISPOSITION

The judgment is affirmed, and the order granting terminating sanctions is also affirmed.  Fire Insurance Exchange and Chern are entitled to recover their costs on appeal.


                                        MARTINEZ, P. J.


We concur:



SEGAL, J.



FEUER, J.

---

(2002) 27 Cal.4th 1017, 1034.)  And to the extent plaintiffs' request is based on rulings against them, it has long been the law that "rulings against a litigant . . . do not [support] a charge of bias and prejudice." (*Dietrich v. Litton Industries, Inc.* (1970) 12 Cal.App.3d 704, 719.)